This opinion will be unpublished and
 may not be cited except as provided by
 Minn. Stat. § 480A.08, subd. 3 (2014).

 STATE OF MINNESOTA
 IN COURT OF APPEALS
 A15-2082

 Minnesota Workers’ Compensation Assigned Risk Plan as administered by RTW, Inc.,
 Respondent,

 vs.

 Dimas Reyes,
 Respondent,
 Advanced Designs Siding and Roofing, Inc.,
 Appellant,
 L M G Construction, Inc.,
 Respondent,
 Robert Garza, Jr.,
 Respondent,
 Jose Luis Gonzalez-Cervantes,
 Respondent,
 Michelle Rivera,
 Respondent,
 Special Compensation Fund,
 Respondent.

 Filed August 22, 2016
 Affirmed
 Stauber, Judge

 Freeborn County District Court
 File No. 24-CV-14-923

Sarah E. Bushnell, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis,
Minnesota (for respondent Minnesota Workers’ Compensation Assigned Risk Plan)

Aaron W. Ferguson, Aaron Ferguson Law, St. Paul, Minnesota (for respondent Demas
Reyes)

Kevin A. Velasquez, Blethen, Gage & Krause, P.L.L.P., Mankato, Minnesota; and
Richard C. Scattergood, Stich, Angell, Kreidler, Dodge & Unke, P.A., Minneapolis,
Minnesota (for appellant Advanced Designs)

LMG Construction, Inc., c/o Jose Luis Gonzalez-Cervantes, Albert Lea, Minnesota (pro se
respondents LMG Construction and Gonzalez-Cervantes)

Robert Garza, Albert Lea, Minnesota (pro se respondent)

Michelle Rivera, Albert Lea, Minnesota (pro se respondent)

Lori Swanson, Attorney General, Rory H. Foley, Margaret Jacot, Assistant Attorney
General, St. Paul, Minnesota (for respondent Special Compensation Fund)

 Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson,

Judge.

 UNPUBLISHED OPINION

STAUBER, Judge

 Appellant construction general contractor challenges summary judgment in favor

of respondent workers’ compensation assigned-risk-plan provider in a declaratory

judgment action to determine insurance coverage. We affirm because the district court

did not err in concluding that under the terms of the assigned-risk-plan policy, the

subcontractor’s workers’ compensation insurance was effectively cancelled before the

date of the worker’s injury and because other issues raised by appellant were not properly

preserved for appeal.

 FACTS

 Appellant Advanced Designs Siding and Roofing, Inc. (Advanced Designs)

challenges summary judgment granted in favor of respondent “Minnesota Workers’

Compensation Assigned Risk Plan as Administered by RTW, Inc.” (RTW) in a

 2
declaratory judgment action arising out of a workers’ compensation insurance-coverage

claim. Respondent Dimas Reyes was injured at work on October 4, 2010, while

employed by respondent LMG Construction, Inc. (LMG), a subcontractor of appellant

Advanced Designs Siding and Roofing, Inc. (Advanced Designs).1 Reyes sought

compensation for his injuries from RTW, a private insurance carrier that administered

workers’ compensation insurance to LMG in accordance with the assigned-risk plan. He

also sought to recover from other individuals and entities, including Advanced Designs,

and respondents LMG, Robert Garza, Jr., Jose Gonzalez-Cervantes, Michelle Rivera, and

the Special Compensation Fund.

 The assigned-risk plan “provide[s] workers’ compensation coverage to employers

[who have been] rejected by a licensed insurance company.” Minn. Stat. § 79.252, subd.

1 (2014). An assigned-risk-plan insurer may deny or terminate workers’ compensation

coverage provided under the plan if a covered employer “persistently refuses to permit

completion of an adequate payroll audit.” Minn. Stat. § 79.252, subd. 3a(3) (2014). The

RTW policy requires LMG to “let us examine and audit all your records that relate to this

policy,” and allows RTW to cancel “a new policy . . . [that] has been in effect for fewer

than 90 days” by providing written notice to LMG’s last known mailing address. LMG’s

address was identified as 422 East 7th Street in Albert Lea (7th Street address).

1
 Under Minnesota law, every employer must carry workers’ compensation insurance for
its employees, unless the employer is exempted or excluded. Minn. Stat. § 176.021,
subd. 1 (2014).

 3
 LMG was insured through the assigned-risk plan under a policy effective May 15,

2009, to May 15, 2010. Initially, the policy was administered by Berkley Risk

Administrators Company, LLC (Berkley), but the policy was reassigned under the plan to

be administered by RTW for 2010-2011.

 On February 23, 2010, RTW sent an insurance renewal offer to LMG at the 7th

Street address. The offer stated:

 Your current worker’s Compensation Policy will expire on
 05/15/2010 at 12:01 a.m. and coverage under that policy will
 terminate as of that date. [. . .]
 The indicated renewal deposit AND any past due
 premiums must be received on or before the expiration date of
 your current policy to ensure continuous coverage, otherwise
 there will be a gap in coverage.

RTW sent LMG a reminder letter in early May, again at the 7th Street address. The

letter notified LMG that its workers’ compensation policy was “pending cancellation

effective 05/15/2010 for non-payment of Down Payment in the amount of $670.00 due

on 05/15/2010.” The letter warns, “Should payment not be received in our office by the

above cancellation date your policy will cancel and coverage will cease.” The policy

was cancelled on May 15, 2010, because the renewal payment was not received by that

date.

 Cindy Kaufenberg, underwriter for RTW, provided an affidavit stating that LMG

mailed the $670 deposit on Monday, May 17, 2010, and RTW received the deposit on

Tuesday, May 18, 2010. RTW issued a “new” policy to LMG on May 20, 2010; the

new policy was to be effective until May 15, 2011. The policy again listed the 7th Street

address as LMG’s proper mailing address. According to Kaufenberg, “It is very

 4
common for insureds to pay the premium late but within the twenty day period [after the

policy expiration date]. I estimate that this occurs several times daily on files for which

I have responsibility. In all of these cases, the policy is cancelled and a new policy is

issued after payment with a lapse of coverage.”

 With regard to the 2009-2010 coverage year, Berkley sent LMG a letter on May

15, 2010, at the 7th Street address. The letter asked LMG to fill out a payroll report

form within 15 days so that Berkley could obtain an “actual payroll base” to determine

whether any refunds or additional premiums were owed for that year. The letter

contained notice that LMG’s current coverage could be cancelled if it failed to provide

this information. LMG did not respond to the letter. Berkley sent a second letter to

LMG labeled “FINAL REQUEST” that asked for the same information. Again, LMG

did not respond. On July 13, 2010, Berkley sent a third letter to LMG labelled “AUDIT

CLOSEOUT NOTICE.” The letter notified LMG that it was not in compliance with the

audit provisions of the policy, which could “result in the cancellation of your policy”

and disqualification from further coverage through the plan. To become compliant,

LMG was directed to “allow an auditor [to] access . . . your records or provide the

requested payroll information.” On July 21, 2010, RTW sent a letter to LMG and its

agent, VJ Insurance Agency Inc (VJ). The letter stated that the current policy would be

cancelled effective September 20, 2010, if LMG failed to comply with the audit

provisions of the 2009-2010 policy. LMG and VJ did not respond to the letter. RTW

sent a notice of policy cancellation to LMG and VJ that was effective on September 20,

2010, again sending the notice letter to their respective addresses.

 5
 Jose Gonzales-Cervantes (Gonzales), an LMG officer, and Michelle Rivera, an

apparent LMG employee, submitted affidavits on behalf of LMG. Rivera asserted that

Gonzales directed her to contact VJ to inform them that LMG was having difficulty

receiving mail at the 7th Street address and to direct them to change LMG’s address to a

different address in Albert Lea, which she did. Gonzales asserted that he directed Rivera

to make an address change before July 21, 2010, and that he “never received notice of

any request for an audit” or “notice of cancellation of the policy.” But Gonzales

apparently did receive a check from RTW that was sent to the 7th Street address in

December 2010 and cashed in early 2011. RTW asserts that it did not receive notice of

a new address for LMG or returned mail that was not delivered to LMG. RTW and

Berkley consistently used the 7th Street address for LMG.

 RTW filed a declaratory judgment action in 2014, seeking a determination of

whether LMG’s policy was in effect at the time of Reyes’ injury on October 4, 2010. If

LMG’s policy was effectively cancelled at the time of Reyes’ injury, Advanced Designs,

as the general contractor, would be liable for “all compensation due an employee of a

subsequent subcontractor who is engaged in work upon the subject matter of the

contract.” Minn. Stat. § 176.215, subd. 1 (2014). Reyes cross-claimed for negligence.

RTW moved for summary judgment, arguing that no policy was in effect when Reyes

was injured because at the time of the injury (1) the policy was a new policy, which was

cancelled within 90 days of its issuance and (2) the policy was cancelled after LMG

failed to complete the mandatory payroll audit. The district court granted summary

judgment on the first issue, concluding that the contract was a new contract that could be

 6
cancelled at any time and was cancelled on September 20, 2010, but denied summary

judgment on the second issue, which concerned RTW’s right to cancel the policy for

LMG’s persistent refusal to permit a payroll audit. Advanced Designs now appeals.2

 DECISION

 “On appeal from summary judgment, [an appellate court] reviews de novo

whether there are any genuine issues of material fact and whether the district court erred

in its application of the law to the facts.” Commerce Bank v. West Bend Mut. Ins. Co.,

870 N.W.2d 770, 773 (Minn. 2015). The appellate court “view[s] the evidence in the

light most favorable to the party against whom summary judgment was granted. . . .” Id.

This court reviews questions of contract interpretation and statutory interpretation de

novo. Sleiter v. Am. Family Mut. Ins. Co., 868 N.W.2d 21, 23 (Minn. 2015) (statutory

interpretation); Valspar Refinish, Inc., v. Gaylord’s, Inc., 764 N.W.2d 359, 364 (Minn.

2009) (contract interpretation). “The district court’s function on a motion for summary

judgment is not to decide issues of fact, but solely to determine whether genuine factual

issues exist.” DLH, Inc. v. Russ, 566 N.W.2d 60, 70 (Minn. 1997); see C.O. v. Doe, 757

N.W.2d 343, 351 (Minn. 2008) (“[S]ummary judgment is not a means of deciding cases

in which the facts are disputed.”). “A material fact is one of such a nature as will affect

the result or outcome of the case depending on its resolution.” Zappa v. Fahey, 310

Minn. 555, 556, 245 N.W.2d 258, 259-60 (1976).

2
 A separate appeal was brought by The Special Compensation Fund, and the two appeals
were consolidated, but The Special Compensation Fund’s appeal was dismissed by order
of this court on April 16, 2016.

 7
 Advanced Designs argues that the district court erred by determining that the

RTW policy was a new policy rather than a renewal policy. According to Advanced

Designs, although LMG’s insurance policy was to expire on Saturday, May 15, 2010,

LMG’s premium check was considered timely under Minn. Stat. § 645.151 (2014). This

statute provides that

 When a[] . . . payment . . . is to be delivered to . . . a
 department, agency, or instrumentality of this state . . . on or
 before a prescribed date and the prescribed date falls on a
 Saturday, Sunday, or legal holiday, it is timely delivered or
 filed if it is delivered or filed on the next succeeding day which
 is not a Saturday, Sunday or legal holiday.

Id. Advanced Designs admits that LMG did not mail its renewal payment until Monday,

May 17, 2010, and that the payment was received by RTW on Tuesday, May 18, 2010.

Because this statute requires “delivery or filing” with the “department, agency, or

instrumentality” to occur on the first day following the “Saturday, Sunday or legal

holiday” on which the payment was to be delivered, Minn. Stat. § 645.151 does not, by

operation of law, excuse the untimeliness of LMG’s payment. Further, section 645.151

does not apply under the terms of the policy, which required LMG to submit its renewal

payment before expiration of the coverage period. See also Minn. Stat. § 79.251, subd.

1(4) (2014) (“The assigned risk plan shall not be deemed a state agency”). The district

court properly granted summary judgment on this issue.

 The remaining issues addressed by Advanced Designs were not raised to or

considered by the district court in reaching its summary-judgment decision. Briefly,

they include new claims that RTW was not permitted to cancel the policy for “any

 8
reason,” that RTW violated the policy by failing to state the reason for cancellation in its

notice of cancellation, and that RTW should be equitably estopped from denying

coverage because it failed to properly provide Advanced Designs with notice of

cancellation. As a rule, this court declines to address issues that were not raised to or

considered by the district court. Thiele v. Stich, 425 N.W.2d 580, 582 (Minn. 1988)

(stating that a reviewing court generally considers only those issues presented to and

decided by the district court). We make an exception in the interests of justice, as noted

during oral argument before this court. See Minn. R. Civ. App. P. 103.04 (stating that

the scope of review on appeal “may be affected by whether proper steps have been taken

to preserve issues for review on appeal” but also permitting the appellate court to

“review any other matter as the interest of justice may require”). However, the interest-

of-justice exception is typically applied when “the question raised for the first time on

appeal is plainly decisive of the entire controversy on its merits,” and “there is no

possible advantage or disadvantage to either party in not having had a prior ruling on the

question by the [district] court.” Schober v. Comm’r of Revenue, 778 N.W.2d 289, 294

(Minn. 2010) (quotation omitted). Neither reason for applying the exception exists here.

We therefore decline to consider the issues raised for the first time on appeal.

 Affirmed.

 9